UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE OCWEN FINANCIAL
CORPORATION SECURITIES LITIGATION

Case. No. 14-CIV-81057-WPD

**CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND
INCORPORATED SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ..................................................................................... 1

II.  THE SETTLEMENT MERITS APPROVAL BY THE COURT ..................................... 4

A.  The Standards for Judicial Approval of Class Action Settlements........................ 4

B.  The Settlement Satisfies the Threshold Consideration of Being
the Product of Good Faith, Arm's-Length Negotiations ....................................... 6

C.  The *Bennett* Factors Support Approval of the Settlement .................................... 7

1.  The Significant Obstacles to Success at Trial Support
Approval of the Settlement ........................................................................ 7

a.  Risks to Establishing Defendants' Liability ................................... 8

b.  Risks Concerning Loss Causation and Damages............................ 9

c.  Defendants' Ability to Pay............................................................ 10

2.  The Settlement Amount Is Within the Range of Reasonableness ........... 11

3.  The Complexity, Expense, and Likely Duration of Continued
Litigation Support Approval of the Settlement........................................ 13

4.  The Reaction of the Class to Date Supports Approval of the Settlement. 14

5.  The Settlement Was Reached On the Eve of Trial Following
More Than Three Years of Extensive Litigation and, Thus, the
Stage of Proceedings Supports Approval of the Settlement .................... 15

D.  The Recommendation of Class Counsel and Class Representatives
Favors Approval of the Settlement ..................................................................... 16

III.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................. 17

IV.  NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS......... 19

V.  CONCLUSION............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
  2002 WL 1162422 (S.D. Fla. May 7, 2002) .................................................................. 14-15

*Almanzar v. Select Portfolio Servicing, Inc.*,
  2016 WL 1169198 (S.D. Fla. Mar. 25, 2016).................................................................20

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
  2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) .................................................................11

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002)......................................................................................5

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .................................................................14

*In re Bear Stearns Cos., Sec., Deriv. & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................6, 13

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .........................5, 10, 16

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ...........................................................................4, 5, 7, 13

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) .....................................5

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) .......................................................................................6

*Braynen, et al. v. Nationstar Mortgage, LLC, et al.*,
  2015 WL 6872519 (S.D. Fla. Nov. 9, 2015)...............................................................5, 20

*Canupp v. Sheldon*,
  2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) ...........................................................5, 6, 8

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .........................................................................5, 7

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) .........................................................................................17

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ........................................................................6

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) .....................................................................6

*Dura Pharma, Inc. v. Broudo*,
   544 U.S. 336 (2005)....................................................................................9, 18

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)........................................................................................19

*Fishoff v. Coty Inc.*,
   2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................8

*Garst v. Franklin Life Ins. Co.*,
   1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999)..........................11, 13, 15

*Gevaerts v. TD Bank, N.A.*,
   2015 WL 6751061 (S.D. Fla. Nov. 5, 2015)..................................................15

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................17

*In re HealthSouth Corp. Sec. Litig.*,
   572 F.3d 854 (11th Cir. 2009) .........................................................................5

*Holman v. Student Loan Xpress, Inc.*,
   2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) ...............................................7

*Hubbard v. BankAtlantic Bancorp., Inc.*,
   688 F.3d 713 (11th Cir. 2012) .........................................................................9

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................6, 12

*Jaffe Pension Plan v. Household Intern., Inc.*,
   756 F. Supp. 2d 928 (N.D. Ill. 2010) ...........................................................14

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) .....................................................................19

*LiPuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) .........................................................15

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) .......................................................................9

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ...................................................................17

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) ..........................................................................19

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................12

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) ................9

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...........................................................15, 16

*Poertner v. The Gillette Co.*,
    2014 WL 4162771 (M.D. Fla. Aug. 21, 2007) ........................................................4

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ............................................................... 13-14

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) .................................................................6, 19

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................... 11-12

*In re Smith*,
    926 F.2d 1027 (11th Cir. 1991) ........................................................................6

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005).................................................................7-8, 16

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...........................................................11, 16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................................................11

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)...............................................................17

*In re The Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ....................................................................13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 14, 2016).................................................12, 13

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)...................................................................9

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ...................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................................17

*In re Vivendi Universal, S.A. Secs. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011)...................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................19

*Warren v. Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988) , *aff'd*, 893 F.2d 347 (11th Cir. 1989) ...................4, 5, 6

*Wilson v. Everbank*,
   2016 WL 457011 (S.D. Fla. Feb. 3, 2016) ............................................7

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
   2001 WL 686879 (M.D. Fla. May 3, 2001) ..........................................10

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................18, 19

**Rules**

Fed. R. Civ. P. 23 ................................................................................ *passim*

**Other Authorities**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action*
   *Settlements: 2016 Review and Analysis* (2017) ....................................12

William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 *Newberg on Class*
   *Actions* § 13:45 (5th ed. 2014)................................................................6

In accordance with Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Class Representatives, Sjunde AP-Fonden ("AP7") and Jay E. Thren ("Thren" and together with AP7, "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Court-certified Class, respectfully move this Court for final approval of the proposed settlement of this securities class action ("Settlement") and for approval of the proposed plan for allocating the net settlement proceeds to the Class ("Plan of Allocation"). Class Representatives' Motion is supported by the following Memorandum of Law and the Declaration of Sharan Nirmul in Support of Proposed Class Action Settlement, Plan of Allocation, and Award of Attorneys' Fees and Expenses ("Nirmul Declaration" or "Nirmul Decl."), filed concurrently herewith.[1]

## MEMORANDUM OF LAW

## I.   PRELIMINARY STATEMENT

Pursuant to the Stipulation, Class Representatives, through their counsel, have obtained a Settlement in the amount of $56 million (comprised of $49 million in cash and no less than 2.5 million shares of Ocwen Financial Corporation common stock with a value at the Final Approval Hearing of no less than $7 million),[2] in exchange for the dismissal of all claims brought in this Action and a full release of claims against Ocwen, William C. Erbey and Ronald M. Faris (collectively, "Defendants") and the other Defendants' Releasees. As described herein and in the accompanying Nirmul Declaration, the Settlement is a very favorable result for the Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.

While Class Representatives and their counsel believe that the claims against Defendants are meritorious, they also recognize that, in the absence of a settlement, they faced substantial

---

[1]   All capitalized terms that are not defined in the Memorandum of Law have the same meanings as those set forth in the Stipulation and Agreement of Settlement dated as of August 16, 2017 (ECF No. 329-1) ("Stipulation") and the Nirmul Declaration. The Nirmul Declaration is an integral part of this submission and, for the sake of brevity in the Memorandum, Class Representatives respectfully refer the Court to the Nirmul Declaration for a detailed description of, among other things: a factual summary of the claims asserted (¶¶ 10-15), the procedural history of the Action (¶¶ 16-250), the negotiations leading to the Settlement (¶¶ 281-285), the risks faced by Class Representatives (¶¶ 251-280), and the terms of the Plan of Allocation (¶¶ 286-290).

[2]   Ocwen's contribution of common stock ("Settlement Shares") to fund the Settlement is subject to the limitation that, in no event, shall Ocwen be required to issue more than four percent (4%) of its outstanding shares of common stock as of the date of the Court's Final Approval Hearing. *See* Stipulation, ¶ 6(c). Additionally, Ocwen may elect to substitute $7 million in cash in lieu of the Settlement Shares at any time before the Final Approval Hearing. *Id.*, ¶ 6(d).

challenges to obtaining any recovery for the Class − let alone a recovery greater than the Settlement Amount.  Notably, this Settlement was reached just days before trial, where Class Representatives would have faced substantial challenges and defenses on almost every element of their claims.  In addition to the risks inherent in any trial, a trial would have been especially risky here, as Class Representatives would have been forced to present their case to a jury primarily through experts, deposition testimony and witnesses adverse to the Class.  Further, the Settlement was reached prior to the Court ruling on any of the Parties' motions *in limine*, and there was a real risk that the Court could have limited Class Representatives' presentation of documents and witnesses at trial, including expert witnesses critical to their case.  Given the complex and highly technical nature of the claims asserted in this Action, both sides would have relied heavily on expert testimony, leading to an inevitable "battle of the experts" with a far from certain outcome.  Moreover, the Parties had agreed that the trial would be bifurcated, where issues of Defendants' liability and per-share damages would be presented in Phase I of the trial, and Phase II would address Defendants' efforts to rebut the fraud on the market presumption of reliance and commence only after the Class was provided notice of a successful verdict and submitted their transactional data for claims.  Considering this timing, and the likelihood that Phase II would only commence after any appeals of a verdict were resolved, the resolution of this case through a trial would have been enormously protracted.[3]

  Finally, one of the greatest risks facing Class Representatives and a foremost factor in their decision to settle this Action was Defendants' ability to satisfy any judgment rendered against them at trial.  Class Representatives were mindful of Ocwen's financial condition leading up to trial and the potential impact of pending litigation and regulatory matters on the Company's future financial condition and the effect this could potentially have on its ability to fund a judgment in an amount greater than the Settlement Amount.  Moreover, Ocwen's limited officers' and directors' insurance – which likely would have been the primary source for funding a judgment in the Class's

---

[3] In other securities fraud class actions that have completed Phase II of the case, and where appeals had been taken, the time from a verdict to a final judgment has taken as long as *seven* years.  *See Jaffe Pension Plan v. Household Intern., Inc.*, Case No. 1:02-cv-05893, Verdict Form, ECF No. 1611 (N.D. Ill. May 7, 2009) & Final Judgment and Order of Dismissal With Prejudice, ECF No. 2267 (N.D. Ill Nov. 10, 2016); *see also In re Vivendi Universal, S.A. Secs. Litig.*, Civ. No. 02-5571 (RJH/HBP), Verdict Form, ECF No. 998 (S.D.N.Y. Feb. 2, 2010) (jury verdict issued on Jan. 29, 2010) & Final Judgment Approving Class Action Settlement of All Remaining Claims, ECF No. 1317 (S.D.N.Y. May 9, 2017).

favor, had been used throughout the case to fund defense costs and would continue to be depleted by the costs of trial.

After more than three years of vigorous litigation, Class Representatives and their counsel were well-informed of the strengths and weaknesses of their case when they agreed to accept a mediator's proposal to settle their claims for $56 million.  Class Counsel's efforts included, *inter alia*: (i) conducting a significant legal and factual investigation into the Class's claims, including interviews of former Ocwen employees and a thorough review of a large volume of publicly available information regarding the Company; (ii) drafting four detailed complaints; (iii) briefing two rounds of motions to dismiss and prevailing on Defendants' motion to dismiss the operative Third Amended Class Action Complaint ("TAC"); (iv) successfully moving for class certification; (v) briefing, in connection with discovery, several motions to compel and motions for protective orders; (vi) completing extensive discovery in a compressed time-frame, including the review of over one million pages of documents produced by Defendants and numerous third parties; (vii) taking the depositions of 13 fact witnesses, including depositions of both Individual Defendants, and defending depositions of both Class Representatives; (viii) consulting extensively with experts and consultants in the areas of market efficiency, damages, loss causation and the mortgage industry, assisting in the preparation of six expert reports, and taking or defending a total of six expert depositions; (ix) successfully moving for partial summary judgment on the elements of falsity and materiality with respect to Defendants' related-party statements; (x) largely prevailing on Defendants' motion for summary judgment as to all of Class Representatives' claims; (xi) vetting the Parties' respective damages assumptions, methodologies and calculations; and (xii) undertaking exhaustive preparations for trial.  *See generally* Nirmul Decl., ¶¶ 7, 16-250.

In addition to the foregoing, the Parties engaged in protracted, arm's-length settlement discussions with the assistance of experienced mediators prior to reaching the Settlement.  The Parties began discussing a possible settlement in July 2016, with a full-day, in-person mediation session facilitated by the Honorable Layn R. Phillips (Ret.), which was unsuccessful.  Thereafter, following another year of hard-fought litigation, including the completion of fact and expert discovery, briefing on class certification and summary judgment, and submission of a pre-trial order, including motions *in limine* and jury instructions, the Parties made a final attempt to resolve the Action in the final days before trial.  With the assistance of Judge Phillips and his team, the Parties participated in several weeks of telephonic negotiations and ultimately accepted Judge

Phillips' proposal to settle the Action for $56 million. The Settlement has the full support of Class Representatives, including the Court-appointed Lead Plaintiff AP7 − a sophisticated, institutional investor of the type favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") that was intimately involved throughout the litigation and settlement negotiations. In addition, Class Counsel, Kessler Topaz Meltzer & Check, LLP − a firm with extensive experience in prosecuting securities class actions, believes that the Settlement is an exceptional outcome for the Class given the risks of taking this Action to trial. Further, while the deadline to object to the Settlement has not yet passed, the reaction of the Class to date also has been favorable, as not a single objection has been received.[4]

In light of the foregoing and the considerations discussed below, Class Representatives and their counsel firmly believe that the Settlement is fair, reasonable, and adequate, satisfies the standards of Rule 23, and provides a very favorable recovery for the Class. Accordingly, Class Representatives respectfully request that the Court grant final approval of the Settlement and deem the Plan of Allocation, which is set forth in the Settlement Notice disseminated to the Class, to be a fair and reasonable method for distributing the Net Settlement Fund to eligible Class Members.

## II.   THE SETTLEMENT MERITS APPROVAL BY THE COURT

### A.   The Standards for Judicial Approval of Class Action Settlements

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. *Poertner v. The Gillette Co.*, 2014 WL 4162771, at *2 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. 626 (11th Cir. July 16, 2015). In approving a settlement under Rule 23(e), the district court must find that it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).[5] To that end, "[t]he Court is required to make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), aff'd, 893 F.2d 347 (11th Cir. 1989).

The Eleventh Circuit held in *Bennett* that in determining whether a proposed settlement is "fair, adequate and reasonable," courts should look to the following factors (the "*Bennett* factors"):

---

[4]   The deadline for submitting an objection is December 1, 2017. If any objections are received after this submission, Class Counsel will address them in its reply to be filed with the Court on or before December 15, 2017.

[5]   Citations and internal footnotes are omitted throughout unless otherwise indicated.

(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Approval of a class action settlement, including application of the *Bennett* factors, "is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992); *Bennett*, 737 F.2d at 987 (same).

Public and judicial policy both strongly favor pretrial settlement of litigation.  *See, e.g., Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519, at *6 (S.D. Fla. Nov. 9, 2015) (there is a "strong judicial policy favoring settlement"); *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (the Court's "Rule 23(e) analysis should be informed by the strong judicial policy favoring settlement as well as the realization that compromise is the essence of settlement").  This policy in support of settlement is particularly strong in class actions and other complex litigation, where continued litigation would require the expenditure of substantial resources.  As the court in *U.S. Oil & Gas* noted, "[c]omplex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.  Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . ." *U.S. Oil & Gas*, 967 F.2d at 493.  *See also Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), aff'd, 737 F.2d 982 (11th Cir. 1984) ("[S]ettlements [of class actions] are highly favored in the law and will be upheld whenever possible.").

Finally, in evaluating a settlement, the court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002) (same); *see also Warren*, 693 F. Supp. at 1060 (in approving settlement of class action, "[t]he Court [afforded] great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation").  Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own

judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[6] *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

Here, as set forth below, the Settlement warrants the Court's final approval.

**B.     The Settlement Satisfies the Threshold Consideration of Being the Product of Good Faith, Arm's-Length Negotiations**

A threshold consideration in evaluating a proposed settlement is whether it is the product of fraud or collusion between the parties. *Warren*, 693 F. Supp. at 1054; *see also Canupp*, 2009 WL 4042928, at *9 ("In determining . . . fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel."). Courts "presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion." William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 13:45 (5th ed. 2014); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("[W]here the case proceeds adversarially, this counsels against a finding of collusion.").

The Settlement clearly satisfies this threshold consideration. The record in this case shows that the Settlement is the product of good-faith, arm's-length settlement negotiations between experienced counsel and facilitated by a highly respected mediator with an extensive background in mediating securities class actions. Nirmul Decl., ¶¶ 6, 281-282.[7] The Parties began discussing a possible resolution of the Action in July 2016, participating in a formal, in-person mediation with

---

[6]     Unless subsequently abrogated or modified, opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

[7]     *See In re Crocs, Inc. Sec. Litig*., 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (approving settlement and noting that the parties "engaged in extensive negotiations and mediation sessions for over a year" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (noting settlement was fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips"); *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement where parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").

Judge Phillips. *Id.*, ¶ 281. Prior to the mediation, the Parties exchanged detailed mediation statements and exhibits supporting their respective positions on the claims asserted, Defendants' defenses, and damages. *Id.* At the mediation − which was attended by counsel for the Parties, certain of the Parties themselves (including representatives from AP7) and representatives for all insurance carriers, the Parties delivered detailed presentations and engaged in hard-fought discussions regarding the issues. Despite their efforts, however, the Parties were too far apart in their respective positions to resolve the Action at that time. *Id.*

In July 2017, following certification of the Class, the completion of fact and expert discovery, the Court's ruling on summary judgment, and the submission of a pre-trial order including jury instructions and *in limine* motions, the Parties made another attempt to settle the Action as final preparations were being made for trial. Nirmul Decl., ¶ 282. Following substantial negotiations with Judge Phillips and Clay M. Cogman, Esq., also of Phillips ADR Enterprises, the Parties accepted a mediator's proposal to settle the Action for total consideration of $56 million. *Id.* Thereafter, the Parties spent several weeks negotiating the specific terms of the Settlement and finalizing the settlement documentation required under Rule 23. *Id.*, ¶ 283. Thus, the negotiations leading to the Settlement here, including the involvement of Judge Phillips and Mr. Cogman, demonstrate beyond question that there was no fraud or collusion in this process. *See Wilson v. Everbank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding the "very fact of the [mediator's] involvement" to weigh in favor of settlement approval); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or collusion" where settlement was "the product of . . . arm's-length, protracted and contentious negotiations with a mediator").

        C.     **The *Bennett* Factors Support Approval of the Settlement**

              1.     **The Significant Obstacles to Success at Trial Support Approval of the Settlement**

The first *Bennett* factor is "the likelihood of success at trial." *Bennett*, 737 F.2d at 986. In assessing Class Representatives' likelihood of success at trial for purposes of determining whether the Settlement is fair, adequate and reasonable, the Court should make only a limited inquiry into "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also Checking Account Overdraft*, 830 F. Supp. 2d at 1345 ("The Court is not called upon to determine whether the settlement reached by the parties is the best possible deal,

nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."); *Canupp*, 2009 WL 4042928, at *10 (in reviewing a settlement, "courts are not to decide the merits of the case or resolve unsettled legal questions").

Although Class Representatives believe that they had adduced substantial evidence to support their claims and were prepared to prove their case at trial, they also acknowledge the significant obstacles to success at trial. As discussed below and in the Nirmul Declaration, Class Representatives faced considerable challenges and defenses to their claims. Nirmul Decl., ¶¶ 251-280. Class Representatives would have had to present their case primarily through experts, deposition testimony and witnesses adverse to the Class, and the technical issues inherent in Ocwen's mortgage servicing business and the relevant mortgage servicing regulations at the center of this case would have presented factual intricacies and challenges for a jury. *Id.*, ¶¶ 254-258. In addition, an adverse ruling on any of the pending *in limine* motions could have limited Class Representatives' presentation of critical evidence at trial. Moreover, even if Class Representatives prevailed at trial, there is no assurance that they would have recovered an amount equal to, much less greater than, the Settlement Amount.

### a.    Risks to Establishing Defendants' Liability

Class Representatives faced numerous hurdles to establishing Defendants' liability at trial. For example, Defendants disputed that their compliance-related statements (i.e., statements concerning Ocwen's compliance with the mortgage servicing regulations it was subject to during the Class Period) were false. Defendants had successfully argued at summary judgment that Ocwen's December 3, 2013 statement that it "services in compliance with [the NMS] as applicable," was true. Nirmul Decl., ¶ 259. The fact that the Court previously found one of Defendants' alleged compliance-related misstatements to be true demonstrates the risk to establishing Defendants' liability with respect to this category of statements at trial. *Id.*, ¶ 265.

Defendants also vigorously contested scienter throughout the Action and were expected to do the same at trial. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of *scienter* is often the most difficult and controversial aspect of a securities fraud claim"). In particular, with respect to their compliance-related statements, Defendants would have argued that given the size and complexity of Ocwen's operations, the number of personnel charged with ensuring and monitoring Ocwen's compliance with applicable regulations, and the lack of an explicit finding of non-compliance by any of

Ocwen's regulators during the Class Period, they reasonably believed that Ocwen was in compliance when their allegedly false statements were made.   Nirmul Decl., ¶ 266.  Likewise, scienter would have been vigorously contested with respect to Defendants' related-party statements (i.e., statements concerning Ocwen's purported adoption of policies, procedures, and practices to prevent conflicts of interest between Ocwen and the Erbey Companies, including Erbey's recusal from negotiations and approval of Ocwen's transactions with such companies). *Id.*, ¶ 264.  Indeed, Class Representatives' pending Motion *in Limine* No. 2 sought to prevent Defendants from introducing, among other things, certain documents to refute their knowledge or recklessness with respect to such related-party statements.  *Id.*  Had the Court ruled in Defendants' favor, Class Representatives would have been faced with another hurdle to proving Defendants' scienter with respect to these related-party statements.

### b.  Risks Concerning Loss Causation and Damages

The calculation and proof of damages suffered by the Class would also be complicated and difficult issues at trial.  To prove damages in this securities case, Class Representatives would have to establish "loss causation," i.e., that Defendants' statements caused their alleged losses.  *See Dura Pharma, Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005).[8]  To establish loss causation, Class Representatives would be required to demonstrate a sufficient connection between the fraudulent conduct and the losses suffered.  *See Meyer v. Greene*, 710 F.3d 1189, 1201 n.13 (11th Cir. 2013).

Throughout the litigation, Defendants disputed whether the alleged corrective disclosures corrected any alleged prior misstatement.  For example, with respect to their statement regarding Ocwen's regulatory compliance, Defendants argued that the alleged corrective disclosures cited by Class Representatives did not relate specifically to Ocwen's compliance with the National Mortgage Settlement ("NMS") servicing standards, which Defendants contended were the only

---

[8]    The United States Supreme Court's decision in *Dura*, and subsequent cases interpreting *Dura*, have made proving loss causation more difficult and uncertain.  *See, e.g.*, *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult.").  In *Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713, 725-26 (11th Cir. 2012), the Eleventh Circuit affirmed a lower court ruling that granted defendants' motion for judgment as a matter of law based on plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor.  *See also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants, holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation under Rule 10b-5), *aff'd*, 627 F.3d 376 (9th Cir. 2010).

relevant regulatory standards at issue. Defendants argued that because none of the alleged corrective disclosures addressed whether Ocwen complied with NMS servicing standards when their allegedly false statements were made, under governing Eleventh Circuit authority the disclosures could not "correct" the alleged misstatements. If Defendants' position was accepted by a jury, the resulting disconnect between the alleged misstatements and the alleged corrective disclosures could preclude a finding of loss causation on some or all of the corrective disclosures alleged in the case. Moreover, if the jury were to accept Defendants' arguments, Defendants would have contended that Plaintiffs' damages expert was unable to disaggregate the impact of news about Ocwen's regulatory compliance from corrective information concerning Ocwen's related-party misstatements potentially excluding a finding of loss causation for those corrective disclosures that Plaintiffs alleged corrected both categories of misstatements. Nirmul Decl., ¶ 270.

As in any securities class action, proof of damages would have been a disputed matter subject to conflicting expert testimony, and it would not be possible to predict with confidence how the court or a jury would resolve such a dispute. *See, e.g.*, *Zuckerman v. Smart Choice Auto. Grp., Inc.*, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

### c.   Defendants' Ability to Pay

One of the greatest risks facing Class Representatives had the Settlement not been reached was Defendants' ability to satisfy any judgment rendered against them in this litigation. Indeed, given Ocwen's financial condition prior to Settlement and the potential impact of pending litigation and regulatory matters on its future financial condition, there was a real risk that Ocwen would be unable to fund a judgment in an amount greater than the Settlement Amount even if the Class prevailed at trial. Nirmul Decl., ¶ 272. In light of this uncertainty, Class Representatives' ability to collect on any part of a judgment in favor of the Class from Ocwen was not guaranteed. Further, given that the personal assets of Defendants Erbey and Faris would have provided for only a small fraction of the Class's aggregate damages, especially in the event the jury apportioned liability in favor of Defendants Erbey and Faris, any recovery for the Class would have been funded primarily out of Ocwen's wasting officers' and directors' insurance, which had already been substantially used for defense costs and would have likely been largely depleted if the Action

10

continued to trial.  *Id.*, ¶ 276.[9]  Courts have found similar circumstances to strongly support settlement.  *See, e.g.*, *In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *8 (E.D. Pa. Nov. 21, 2008) ("[c]ontinuing to trial in the hopes of obtaining a higher penalty would merely deplete the insurance policy proceeds . . . leaving the class, if successful, with a lesser judgment, not a greater one. This factor weighs heavily in favor of settlement"); *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *4 (S.D.N.Y. May 14, 2004) (limitations on the individual defendants' ability to pay and the likely depletion of D&O insurance before trial were the "overriding consideration driving the settlement negotiations" and supported approval of the settlement).

In sum, while Class Representatives had solid responses to Defendants' contentions, how the issues of material falsity, scienter, loss causation and damages would be resolved by a jury at trial was far from certain.  Even if Class Representatives prevailed on these issues at trial, there was a risk that Defendants would be unable to satisfy a judgment larger than the Settlement Amount or, after the substantial costs of trial and post-trial appeals, any judgment at all. Accordingly, the first *Bennett* factor strongly supports the Settlement.

## 2.      The Settlement Amount Is Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine the possible range of recovery and then ascertain where within that range fair, adequate, and reasonable settlements lie." *Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("the second and third considerations of the *Bennett* test are easily combined").  Moreover, as the Court in *Garst* observed:

> "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

*Garst*, 1999 U.S. Dist. LEXIS 22666, at *64-65; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in

---

[9]      In its Form 8-K filed with the SEC on July 20, 2017, Ocwen stated that it expected to recover between $12 million to $14 million of the $49 million cash component of the Settlement from insurance proceeds.

comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Although Class Representatives' damages expert estimated the Class's potential damages to be approximately $1.4 billion in the aggregate, which assumed that Class Representatives prevailed on every false statement and each and every corrective disclosure, there were substantial risks to obtaining a recovery anywhere close to that amount.   Nirmul Decl., ¶ 9.   At trial, Defendants would be expected to argue that damages were truly zero, and at a minimum, were far less than the $1.4 billion figure.   For example, if a jury were to find liability for the recusal statements only, and the August 4, 2014 disclosure as the only corrective disclosure of these misstatements, one of the many alternative damages scenarios that were possible, the Class's estimated potential damages would be $75 million.   *Id.*   Thus, the Settlement Amount can be viewed as representing a recovery of approximately 4% to 75% of the Class's potential recoverable damages in this Action, as estimated by Class Representatives' damages expert.   *Id.*   By way of comparison, Cornerstone Research has reported that in 2016, median securities class action settlements nationally as a percentage of estimated damages were only 1.5% for cases with estimated damages between $1 and $4.99 billion, up from 1.3% for the same range for years 2006 through 2015.[10]   Moreover, in light of the concerns regarding Ocwen's ability to fund a judgment in this Action, this recovery is even more impressive.

In absolute terms, the $56 million Settlement is substantially larger than the typical securities class action settlement – far exceeding both the national median securities class action settlement ($8.6 million) in 2016 and the median securities class action settlement in the Eleventh

---

[10]     *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis* (2017) ("Cornerstone Research"), attached as Exhibit 3 to the Nirmul Declaration, at 8.   *See also, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 14, 2016) (approving settlement representing 5.5% of the maximum damages and noting that the settlement is "an excellent recovery, returning more than triple the average settlement in cases of this size); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement yielding 6% of potential damages and finding settlement to be "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *Int'l Game Tech.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering approximately 3.5% of the maximum damages that plaintiffs believed could be recovered at trial and noting that the amount was within the median recovery in securities class actions settled in the last few years).

Circuit ($5.2 million) for the years 2007-2016.[11]  In fact, 79% of post-PSLRA settlements have settled for $25 million or less.[12]

Therefore, given the risks of proceeding with the Action, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" and this factor favors approval of the Settlement.  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

### 3.    The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

The fourth *Bennett* factor, the complexity, expense and duration of litigation, also weighs heavily in favor of the Settlement.  When the Settlement was reached, the Parties were days away from trial.  Given the volume of evidence Class Representatives obtained and reviewed during the course of this Action (including the more than one million pages of documents produced by Defendants and third parties), the highly technical issues regarding the mortgage servicing industry and related regulations and the tenacity of Defendants and their counsel in defending this case, there is no question that a trial of this Action would be complex and highly contentious.

In evaluating the Settlement, the Court should consider "the significant burden this case would have imposed if it went to trial."  *Thorpe*, 2016 WL 10518902, at *3.  Trial would involve significant challenges to establishing the required elements of Class Representatives' Section 10(b) claims.  *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009) ("The very nature of a securities fraud case demands a difficult level of proof to establish liability. Elements such as scienter, reliance, and materiality of representation are notoriously difficult to establish.").  Class Representatives would have relied heavily on expert testimony to make its case and, as mentioned above, the outcome of a battle between competing experts is highly uncertain.  *See Bear Stearns*, 909 F. Supp. 2d at 267 ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").  Had Defendants' damages and loss causation arguments been accepted by a jury, damages in this case could have been greatly reduced or even eliminated, and the Class might obtain a result far less beneficial then the one provided by the Settlement.  *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) (the

---

[11]    *See* Cornerstone Research (Ex. 3 to the Nirmul Decl.), at 1, fig. 1, and 23, App. 3.

[12]    *See* Cornerstone Research (Ex. 3 to Nirmul Decl.), at 5.

"unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of appellate activity if Lead Plaintiff was to prevail at trial – "the benefits to the class of the present settlement become all the more apparent.").

Furthermore, as Class Counsel is well aware, even a jury verdict in favor of the Class does not guarantee a recovery of damages for the Class. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 at *1 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict in favor of plaintiff class and granting judgment for defendants as a matter of law). Defendants would undoubtedly have appealed any adverse judgment, leading to additional years of continued litigation, thereby exposing the Class to the continued risk of a judgment reduction or even a complete reversal. Even after a jury verdict on liability and per share damages, the Parties contemplated a bifurcated trial in which in a second phase, Defendants would have had the opportunity to rebut the fraud-on-the-market presumption of reliance through testing of individual Class Members' reliance. *See* ECF No. 311 at 1 ("Defendants consent to bifurcating the trial."). In securities cases that have proceeded to this phase, the proceedings have provided class members an opportunity to receive adequate notice of the finding of liability, submit their transactional data, and then have allowed defendants the opportunity to selectively conduct mini-trials to test individualized issues of reliance.[13]

Had this Action proceeded, a trial and the appeals that would follow, as well as the contemplated second phase of trial, would have been complex, time consuming (for both the Parties and the Court) and expensive, and Class Representatives faced the prospect of obtaining a judgment amounting to less than the Settlement Amount, or no recovery at all. The Settlement provides an immediate and certain recovery for the Class without the considerable risk, expense, and delay of further litigation. Therefore, this factor strongly supports the Settlement.

### 4. The Reaction of the Class to Date Supports Approval of the Settlement

The reaction of class members to a proposed settlement is a significant factor for courts to consider when assessing a proposed settlement. *See, e.g.*, *Ressler*, 822 F. Supp. at 1556 (the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy"); *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. May 7,

---

[13]   *See, e.g., In re Vivendi Universal, S.A. Secs. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011); *Jaffe Pension Plan v. Household Intern., Inc.*, 756 F. Supp. 2d 928 (N.D. Ill. 2010).

2002) ("The fact that no objections have been filed strongly favors approval of the settlement.");
*Garst*, 1999 U.S. Dist. LEXIS 22666, at *71-72 ("small amount of opposition strongly supports
approving the Settlement").

To date, the Settlement Notice and Claim Form have been mailed to over 110,000 potential
Class Members and nominees and the Summary Settlement Notice was published in *Investor's
Business Daily* and transmitted over *PRNewswire*.[14]   The Settlement Notice informs Class
Members of, among other things, their right to object to the Settlement.   Pursuant to the
Preliminary Approval Order, and as set forth in the Settlement Notice, the Summary Settlement
Notice and on the case website (www.OcwenSecuritiesLitigation.com), the deadline for Class
Members to submit an objection is December 1, 2017.   To date, no objections to any aspect of the
Settlement have been received.   Nirmul Decl., ¶ 296.[15]

### 5.   The Settlement Was Reached On the Eve of Trial Following More Than Three Years of Extensive Litigation and, Thus, the Stage of Proceedings Supports Approval of the Settlement

The purpose of considering the sixth *Bennett* factor − the stage of the proceedings at which
the settlement was achieved, is to ensure that plaintiffs and their counsel had sufficient information
to evaluate their case and to determine the adequacy of the settlement against further litigation.
*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007); *accord LiPuma v. Am.
Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).   In this respect, "[t]he Court considers
the degree of case development that class counsel have accomplished prior to settlement to ensure
that counsel had an adequate appreciation of the merits of the case before negotiating."   *Gevaerts
v. TD Bank, N.A.*, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015).

This case was zealously litigated from its commencement in August 2014 through the
Parties' agreement-in-principle to settle the Action just days before trial.   Before reaching the
Settlement, Class Representatives, through Class Counsel, had filed four detailed complaints based
on their extensive investigation into the Class's claims and completed both fact and expert
discovery, including reviewing over one million pages of documents produced by Defendants and

---

[14]      *See* Declaration of Eric Schachter Regarding (A) Mailing of Settlement Notice and Claim
Form; and (B) Publication of Summary Settlement Notice ("Schachter Decl."), attached as Exhibit
5 to the Nirmul Decl., at ¶¶ 9, 10.

[15]      If any objections are received after this submission, Class Counsel will address them in its
reply submission to be filed on or before December 15, 2017.

third parties, preparing and serving six detailed expert reports on Defendants, and participating in, taking or defending a total of 21 depositions. Class Representatives also researched and briefed two rounds of motions to dismiss, prepared and filed a motion for class certification, briefed several motions to compel and motions for protective orders, prepared and filed a motion for partial summary judgment, researched and briefed Defendants' motion for summary judgment and undertook exhaustive preparations for trial, including conducting a two-day focus group with a jury consultant, identifying exhibits and deposition testimony to utilize at trial, negotiating a joint Pre-Trial Stipulation with Defendants, preparing jury instructions and a verdict form and preparing at length with multiple experts. *See generally* Nirmul Decl., ¶¶ 16-250.

The Parties also engaged in protracted settlement negotiations prior to reaching the Settlement. On July 14, 2016, the Parties engaged in a full-day, in-person mediation session with Judge Phillips. Nirmul Decl., ¶ 281. Although this mediation and the discussions that followed did not result in a resolution of the matter, the Parties gained invaluable insight into each other's respective positions on liability and damages. A year later as preparations for trial were underway, the Parties resumed settlement discussions with Judge Phillips, engaging in several weeks of telephonic negotiations, and ultimately resolving the Action for $56 million. *Id.*, ¶ 282.

Accordingly, when the Settlement was reached, Class Representatives and Class Counsel had sufficient information to assess the strengths and weaknesses of their case and were "well aware of the other side's positions of the merits thereof." *Sunbeam*, 176 F. Supp. 2d at 1332. This factor favors approval of the Settlement.

### D.   The Recommendation of Class Counsel and Class Representatives Favors Approval of the Settlement

In determining whether the proposed Settlement is fair, adequate and reasonable, the Court may rely on the judgment of counsel, and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Behrens*, 118 F.R.D. at 539; *accord Perez*, 501 F. Supp. 2d at 1380; *Strube*, 226 F.R.D. at 703. Class Counsel – a firm with extensive experience in securities class-action litigation and well informed about the strengths and weaknesses of this case following over three years of hard-fought litigation to the eve of trial, strongly endorses the Settlement and believes that it represents a very favorable result for the Class. *See id.* at 703 ("[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate.").

In addition, the Court-appointed Lead Plaintiff and Class Representative AP7, a sophisticated institutional investor that closely monitored and participated in this litigation from

the outset, strongly endorses the Settlement.  *See* Gröttheim Declaration (Ex. 1 to Nirmul Decl.), at ¶ 4.  Such an endorsement by the Lead Plaintiff appointed by the Court pursuant to the PSLRA provides additional support for the Settlement's fairness.  *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (a settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness").  Court-appointed Class Representative Thren also supports the Settlement and believes it to be in the best interests of the Class.  *See* Thren Declaration (Ex. 2 to Nirmul Decl.), at ¶ 4.

For all of the foregoing reasons, the Court should find that the Settlement is fair, adequate and reasonable, in the Class's best interests, and warrants final approval by the Court.

## III.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Following approval of the Settlement and upon entry of an Order approving distribution, the Net Settlement Fund will be distributed to Authorized Claimants.  The proposed Plan of Allocation ("Plan") contained in the Settlement Notice details the manner in which the Net Settlement Fund will be allocated.  *See* Schachter Decl., Ex. A (Appendix A).

Approval of a plan of allocation is governed by the same standards for approving a class action settlement – it must be "fair, adequate and reasonable" and "not the product of collusion between the parties."  *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational[] basis."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).  Moreover, it is appropriate for plans of allocation in securities class actions to distribute settlement proceeds based on an assessment of the relative strengths and weaknesses of class members' claims.  *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (approving plan of allocation that "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strength and value of different categories of claims.").

Here, the Plan, which was developed by Class Counsel after careful consideration and with the assistance of Plaintiffs' damages expert, Zachary Nye, Ph.D. and his firm Stanford Consulting Group, is a fair and reasonable method for allocating the Net Settlement Fund among eligible Class

17

Members who submit Claim Forms.  Nirmul Decl., ¶¶ 286-288.  The Plan is designed to equitably distribute the Net Settlement Fund among those Class Members who purportedly suffered economic losses as a result of the alleged violations of the federal securities laws set forth in the TAC, as opposed to economic losses caused by market or industry factors or company-specific factors unrelated thereto.  *Id.*, ¶ 287.  The Plan incorporates a thorough analysis of the price movement in Ocwen common stock over the course of the Class Period, and the changes in the price net of market- and industry- wide effects following public disclosures that allegedly corrected the respective alleged misrepresentations and omissions.  *Id.*, ¶ 288.

Under the Plan, a Recognized Loss Amount will be calculated for each share of Ocwen common stock purchased or otherwise acquired during the Class Period (i.e., May 2, 2013 through December 19, 2014, inclusive) that is listed in a Claimant's Claim Form and for which adequate documentation is provided.  The calculation of a Recognized Loss Amount (and ultimately, a Claimant's "Recognized Claim") will depend upon several factors, including the date(s) when the Claimant purchased or acquired his, her or its Ocwen common stock during the Class Period, and whether such stock was sold and if so, when and at what price.  *Id*., ¶ 289.  Pursuant to the Plan, in order to have a loss, the Ocwen common stock purchased or acquired during the Class Period must have been held through one or more of the alleged corrective disclosures dates (i.e., February 6, 2014, February 26, 2014, August 4, 2014, October 21, 2014, October 22, 2014, December 16, 2014, December 22, 2014 and December 23, 2014).  *Id*.; *see also Dura*, 544 U.S. at 342 (investors who bought and sold shares "before the relevant truth begins to leak out" have no recognized losses because "the misrepresentation will not have led to any loss").[16]  The Claims Administrator for the Settlement, A.B. Data, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund by dividing the Authorized Claimant's Recognized Claim (i.e., the sum of a claimant's Recognized Loss Amounts as calculated under the Plan) by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Nirmul Decl., 289; *see also* Schachter Decl., Ex. A (Appendix A).

The Plan was fully disclosed in the Settlement Notice mailed to potential Class Members and nominees.  To date, there have been no objections to the Plan.  Nirmul Decl., ¶ 290. Accordingly, Class Counsel believes that the Plan is fair and reasonable and should be approved.

---

[16]     The calculation of a Claimant's Recognized Claim also takes into account the PSLRA's statutory limitation on recoverable damages.  *See* 15 U.S.C. § 78u-4(e).

## IV.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs." *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1307 n.10 (11th Cir. 2012). Rule 23 requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). Moreover, Rule 23(e)(1) requires that notice of a settlement be "reasonable" – i.e., it must "fairy apprise prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The notice program utilized here, as set forth in the Court's Preliminary Approval Order, easily meets this standard.

The Settlement Notice contains the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) the nature of the Action and claims asserted; (ii) the definition of the Class certified by the Court; (iii) the basic terms of the Settlement, including the amount of the consideration and the releases to be given; (iv) the Plan of Allocation; (v) the reasons why the Parties are proposing the Settlement; (vi) the maximum amount of attorneys' fees and expenses that will be sought; (vii) a description of Class Members' right to object to the Settlement or any aspect thereof; and (viii) notice of the binding effect of a judgment on Class Members. The Settlement Notice also provides recipients with information on how to submit a Claim Form in order to potentially receive a distribution from the Net Settlement Fund. *See* Schachter Decl., Ex. A.[17]

The notice program was carried out by the Court-authorized Claims Administrator, A.B. Data, under the supervision of Class Counsel. *See generally* Schachter Decl. In accordance with the Preliminary Approval Order, as of November 16, 2017, A.B. Data has mailed over 110,000 copies of the Settlement Notice and Claim Form via First-Class Mail to all persons and entities who were previously mailed copies of the Notice of Pendency and any other potential Class

---

[17]    *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (holding that notice must contain "an adequate description of the proceedings written in objective, neutral terms, that . . . may be understood by the average absentee class member"); *see also Saccoccio*, 297 F.R.D. at 691.

Members who otherwise could be identified with reasonable effort.  Schachter Decl., ¶¶ 4-9.  A.B. Data also caused the Summary Settlement Notice to be published in *Investor's Business Daily* and transmitted over *PRNewswire*.  *Id.*, ¶ 10.  In addition, A.B. Data updated the website created for this Action, www.OcwenSecuritiesLitigation.com, to provide members of the Class and other interested persons with information about the Settlement and the applicable deadlines, as well as access to downloadable copies of the Settlement Notice (including the Plan of Allocation), the Claim Form, Stipulation, Preliminary Approval Order and TAC.  *Id.*, ¶ 13.

This combination of individual First-Class Mail to all members of the Class who were previously mailed copies of the Notice of Pendency or were otherwise identified with reasonable effort, supplemented by notice in a widely-circulated publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Almanzar v. Select Portfolio Servicing, Inc.*, 2016 WL 1169198, at *2 (S.D. Fla. Mar. 25, 2016); *Braynen*, 2015 WL 6872519, at *6.

**V.     CONCLUSION**

For the reasons stated herein and in the Nirmul Declaration, Class Representatives respectfully request that the Court: (i) finally approve the proposed Settlement as fair, reasonable, and adequate and (ii) approve the Plan of Allocation.  Proposed orders will be submitted with Class Representatives' reply papers, which will be filed after the December 1, 2017 deadline for objecting to the Settlement has passed.

**<u>LOCAL RULE 7.1(A)(3) CERTIFICATION</u>**

Counsel for Class Representatives file this Motion and supporting Memorandum of Law in accordance with paragraph 24 of the Preliminary Approval Order.  *See* ECF No. 330.

Dated: November 17, 2017

                Respectfully submitted,

                **SALLAH ASTARITA & COX, LLC**

                By: */s/ Joshua A. Katz*
                Joshua A. Katz
                Florida Bar No. 848301
                Email: jak@sallahlaw.com
                James D. Sallah
                Florida Bar No. 92584
                Email: jds@sallahlaw.com
                Jeffrey L. Cox

Florida Bar No. 173479
Email: jlc@sallahlaw.com
2255 Glades Road, Suite 300E
Boca Raton, Florida 33431
Telephone: (561) 989-9080
Facsimile: (561) 989-9020

*Liaison Counsel for Class Representatives
and the Class*


**KESSLER TOPAZ
MELTZER & CHECK LLP**

By: */s/ Sharan Nirmul*
Sharan Nirmul (admitted *pro hac vice*)
snirmul@ktmc.com
David Kessler (admitted *pro hac vice*)
dkessler@ktmc.com
Darren J. Check, Esq.
dcheck@ktmc.com
Richard A. Russo, Jr. (admitted *pro hac vice*)
rrusso@ktmc.com
Michelle M. Newcomer (admitted *pro hac vice*)
mnewcomer@ktmc.com
Nathan Hasiuk (admitted *pro hac vice*)
nhasiuk@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer Joost (admitted *pro hac vice*)
jjoost@ktmc.com
1 Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Class Representatives
and the Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 17, 2017 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Joshua A. Katz*